IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| COMPAÑÍA ADMINISTRADORA DE RECUPERACIÓN DE ACTIVOS ADMINISTRADORA DE FONDOS DE INVERSIÓN SOCIEDAD ANÓNIMA, ) ) ) ) ) ) | |
| Plaintiff, ) ) | |
| v.  ) ) | No.  05-3071 |
| TITAN INTERNATIONAL, INC., ) ) | |
| Defendant. ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Plaintiff Compañía Administradora De Recuperación De Activos Administradora De Fondos De Inversión Sociedad Anónima's (Compania) Motion for Summary Judgment (d/e 55) (Motion). Compania brings this action to enforce a corporate guaranty issued by Defendant Titan International, Inc. (Titan) to guarantee the debts of a Titan Uruguayan subsidiary, Fabrica Uruguaya De Neumaticos S.A. (FUNSA), to Compania's predecessor in interest, Banco de la Republica Oriental del Uruguay (BROU).  For the reasons set forth

1

below, the Motion is allowed.

## STATEMENT OF FACTS

On April 19, 1999, Titan executed a document entitled "Garantia Solidaria" (Guaranty) in favor of BROU. <u>Motion</u>, Exhibit B, <u>Original and Translated BROU Guaranty</u>. The Guaranty was signed by Titan's Vice President Gary L. Carlson. Carlson was Vice President of Titan and President of another Titan subsidiary, Titan Tire Company (Titan Tire). Titan Tire's comptroller Gary Schuster notarized Carlson's signature.[1] Titan is an Illinois corporation with its principal place of business in Illinois. Carlson executed the Guaranty in Iowa. The English translation of the Guaranty states, in part:

> We hereby constitute ourselves joint sureties for the amounts currently owed or possibly to be owed in the future by the company FÁBRICA URUGUAYA DE NEUMÁTICOS S.A. ("FUNSA") to Banco de la República Oriental del Uruguay, in Checking Account, Promissory Notes, Acceptance Discount or under any other status or reason up to the amount of US$

---

[1] Carlson does not remember signing the Guaranty, but acknowledges that the signature appears to be his. <u>Motion</u>, Exhibit II, <u>Deposition of Gary Carlson</u> at 11-12. Schuster verified his signature and his notary stamp. He also stated that his practice is to always observe a person sign a document before he notarizes it. <u>Motion</u>, Exhibit HH, <u>Deposition of Gary Schuster</u> at 32-37. The notary acknowledgment carries a strong presumption of validity. <u>Butler v. Encyclopedia Brittanica, Inc.</u>, 41 F.3d 285, 294-95 (7th Cir. 1994). Carlson's lack of certainty is insufficient to create an issue of fact regarding the authenticity of the Guaranty or his signature. <u>See</u> <u>United States v. Binzel</u>, 907 F.2d 746, 749 (7th Cir. 1990).

> 1,000,000 (U.S. Dollars one million) plus the corresponding interest, as stipulated in the respective debt documentation, until the date of payment, undertaking to pay the amount of said debt at any time Banco de la República Oriental del Uruguay ("BROU") requires, with the understanding that this guarantee also includes the renewals, repetitions, extensions, terms or periods of grace, full or partial, granted by BROU, including for the balance owed, with free of protest clause.

Motion, Exhibit B. Titan's Board of Directors issued the following resolution on March 26, 1998 (Resolution):

> RESOLVED, that the directors of the Company be and hereby do authorize the Maurice M. Taylor, Jr. or his designee, which is Gary L. Carlson, be and hereby are authorized to execute such instruments, documents, certificates and other writings he deems necessary or desirable to carry out and effectuate the business of Fabrica Uruguaya de Neumaticas S.A. ("FUNSA")

Motion, Exhibit D, Copy of Guaranty and Supporting Documents at Comp002785. In April 1999, Titan's Secretary Cheri T. Holley certified that the Resolution of Titan's Board of Directors was, "now in full force and effect." The certification is dated April 16, 1999, but the notary attestation states that Holley signed the certification on April 19, 1999. Id. Carlson's execution of the Guaranty was inconsistent with Titan corporate policy and was not authorized by Titan's President Maurice M. Taylor, Jr. Appendix (d/e 58) (Titan Appendix) to Defendant Titan International, Inc.'s Opposition to Plaintiff's Motion for Summary Judgment (d/e 57), Exhibit

A, Affidavit of Maurice M. Taylor, Jr. (Taylor Affidavit), ¶¶ 3-4.

The debts were secured by Titan's Guaranty and by a pledge of all of FUNSA's plant and equipment (Collateral). The pledge of the Collateral was evidenced by a Pledge Contract dated December 23, 1985. Titan Appendix, Exhibit A, Taylor Affidavit, attached Translation of Pledge Contract. The Pledge Contract recited that BROU had, at that time, extended FUNSA a line of credit of up to $5,000,000.00. Id..

On March 4, 2002, FUNSA declared bankruptcy under Uruguayan law. As of the date of the bankruptcy filing, FUNSA owed more than $4,000,000.00 to BROU. On December 31, 2003, BROU transferred all of its FUNSA indebtedness to Compania, including all rights in the Collateral, and all rights against Titan under the Guaranty.

In March 2004, Compania secured an appraisal of the Collateral. The appraisal put the value of the Collateral between $1,500,000.00 and $2,300,000.00. Titan submitted to the Court an Affidavit of Dannys Correa, an auditor with PricewaterhouseCoopers Ltda. Uruguay (Pricewaterhouse). Taylor Appendix, Exhibit B, Affidavit of Dannys Correa. Correa attached working papers to his Affidavit. The Affidavit states that the working papers included an appraisal of the Collateral, dated February

4

15, 2000, performed by a person named Mario Durán Lasala. Pricewaterhouse received the appraisal from FUNSA. This appraisal set the final replacement cost at US$14,884,065.00, and the "final selling price" at US$9,132,450.00. Id., ¶ 5. Correa's Affidavit also contains the following caveat:

> Working papers are some of the elements granting support to our report and helping us carry out our review. Working papers show the procedures conducted, the information obtained, and the results of our review. The procedures we carried out were limited to those we deemed necessary to enable us to issue our report. Accordingly, we do not provide any statement on the sufficiency or adequacy of the information contained in our working papers or our review procedures for any other purposes sought to be achieved.

Id., ¶ 6.[2]

On May 6, 2004, Compania sold its interest in the collateral to a third party, along with $3,000,000.00 of its claims against FUNSA, for the sum of $2,000,000.00. Compania retained more than $1,000,000.00 in debt owed by FUNSA. On March 31, 2004, and on September 24, 2004, Compania demanded payment from Titan under the Guaranty. Titan

---

[2]Titan also submitted the Affidavit of Maurice Taylor. Response, Exhibit A, Affidavit of Maurice Taylor. Taylor opines that the Collateral was worth in excess of $10,000,000.00. The Court struck Taylor's opinions by Text Order entered October 11, 2006. The Court will not consider Taylor's estimates of value.

5

refused. Compania then brought this diversity action. The amount due and owing by FUNSA to Compania as of May 31, 2006, was $1,000,284.63, plus $571,827.82 in interest. Motion, Exhibit OO, Declaration of Daniela Varela.

## CAPACITY TO SUE

Titan first argues that Compania cannot bring an action in Illinois because it has not registered as a foreign corporation with the Illinois Secretary of State. In order to bring an action in this Court, Compania must have the capacity to sue in Illinois. Fed. R. Civ. P. 17(b). if Compania is a foreign corporation that transacts business in Illinois, it must register with the Secretary of State in order to have capacity to sue. 805 ILCS 5/13.70(a). Titan has the burden to show that Compania transacts business in Illinois. Subway Restaurants, Inc. v. Riggs, 297 Ill.App.3d 284, 289, 696 N.E.2d 733, 737 (1st Dist. 1998). A corporation that is involved in only occasional and isolated transactions in Illinois is not considered to be transacting business in Illinois and is not required to register with the state. Id. Titan has presented no evidence that Compania regularly transacts business in Illinois. Compania, thus, is not required to register with the Illinois Secretary of State. Compania may bring this action.

CHOICE OF LAW

The Court must also determine what law governs the Guaranty. Compania asserts that Illinois law controls. Motion at 10 n. 6. Titan does not address the choice of law issue directly, but relies on Illinois law. The Court agrees that Illinois law applies. The Guaranty was executed in Iowa by an Illinois corporation with its principal place of business in Illinois. Titan, further, would perform its obligation on the Guaranty in Illinois. See Boise Cascade Home & Land Corp. v. Utilities, Inc., 127 Ill.App.3d 4, 468 N.E.2d 442, 448-49 (1st Dist. 1984).

ANALYSIS

At summary judgment, Compania must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Titan. Any doubt as to the existence of a genuine issue for trial must be resolved against Compania. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once Compania has met its burden, Titan must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial. Celotex Corp., 477 U.S. at

322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Guarantees are enforceable according to their terms so long as the terms are clear and unambiguous. F.D.I.C. v. Rayman, 117 F.3d 994, 998 (7th Cir. 1997). In this case, Titan agreed to guarantee payment of up to $1,000,000.00 of FUNSA's debts to BROU, plus interest. FUNSA owed BROU in excess of $4,000,000.00. BROU assigned the debt to Compania. Compania accepted $2,000,000.00 in exchange for $3,000,000.00 of this debt and an assignment of its rights in the Collateral. Compania, further, demanded that Titan perform on its Guaranty and pay $1,000,000.00, of FUNSA's remaining obligations, plus interest. Titan has refused. Compania has met its burden to make a prima facie showing that Titan owes the money.

Titan attempts to create an issue of fact regarding the validity of the Guaranty. Titan fails. Schuster notarized Carlson's signature, as Vice President of Titan, on the Guaranty on April 19, 1999. The notarization creates a presumption of validity. Butler, 41 F.3d at 294-95. Titan's Secretary Holley certified that the Resolution was in full force and effect on the date that Carlson executed the Guaranty. Her signature on the

8

certification was also notarized. The Resolution authorized Carlson "to execute such instruments, documents, certificates and other writings he deems necessary or desirable to carry out and effectuate the business of Fabrica Uruguaya de Neumaticas S.A. ("FUNSA")." Carlson, thus, had the authority to execute the Guaranty on behalf of Titan. The Guaranty is valid and enforceable.

Titan next argues that Compania impaired its rights as a Guarantor by failing to give Titan notice of its intent to sell the Collateral, and by selling the Collateral for $2,000,000.00. Generally, guarantees are to be strictly construed in favor of the guarantor. "Any action taken by a creditor without the guarantor's consent which varies the terms of the principal obligation, increases the guarantor's risk or deprives the guarantor of the opportunity to protect himself will result in a discharge pro tanto of the guarantor from his obligation." McHenry State Bank v. Y & A Trucking, Inc., 117 Ill.App.3d 629, 633, 454 N.E.2d 345, 348 (2nd Dist. 1983). Titan argues that the Collateral was worth in excess of $9,000,000.00, and so, the Collateral could have satisfied the debt completely, or, if Titan paid on the Guaranty, Titan could have exercised the right of subrogation to pursue FUNSA's equity in the Collateral to recover the funds that Titan would

have paid.

Compania argues that guarantors may agree to provide absolute and unconditional guarantees, that the Guaranty was an absolute and unconditional guarantee, and that all defenses are waived. Absolute and unconditional guarantees, however, contain express language to the effect that: (1) the guarantee is absolute and unconditional; and (2) the guarantor waives all rights to notice and to any obligation of the creditor not to impair the guarantor's position. See e.g., Rayman, 117 F.3d at 996-97; United States v. Shirman, 41 F.R.D. 368, 371, 372-73 (N.D. Ill. 1966). There is no such language in the Guaranty. The Court, therefore, concludes that Titan did not waive its defenses and did not agree to an absolute and unconditional guarantee.

Compania also argues that the Titan asserted defenses are limited to guarantees of negotiable instruments. The Court disagrees. The Illinois Uniform Commercial Code contains provisions regarding defenses to guarantees of negotiable instruments. See 810 ILCS 5/3-605. Those provisions are not applicable here. The principle that a creditor may not impair the rights of a guarantor, however, has existed in Illinois law before the enactment of the U.C.C. and applies to guarantees of debts that were

not evidenced by negotiable instruments. E.g., Barrett v. Shanks, 382 Ill. 434, 47 N.E.2d 481, 484 (Ill. 1943). Titan can raise these defenses.

Titan has the burden to present evidence to show that an issue of fact exists on any of these defenses. Celotex Corp., 477 U.S. at 322; e.g., In re Hovis, 356 F.3d 820, 823 (7th Cir. 2004) (Guarantor failed to present evidence of injury from creditor's failure to notify guarantor of the sale of collateral). Titan argues that it does not need to present evidence of actual injury if it can establish that Compania impaired the Collateral. See McHenry State Bank, 454 N.E.2d at 348. Titan, however, must still present evidence that Compania impaired the Collateral.

Titan has presented no competent evidence that BROU or Compania impaired the Collateral or otherwise increased the risk to Titan under the Guaranty. The failure to notify Titan of the sale of the Collateral, and the sale of the Collateral itself, only impaired the Collateral or increased the risk to Titan if the $2,000,000.00 purchase price was inadequate. In re Hovis, 356 F.3d at 823. If the $2,000,000.00 purchase price was reasonable, then Titan's position was unaffected by the sale. The proceeds from the sale paid down FUNSA's debt, but the debt still exceeded the $1,000,000.00, guaranteed by Titan.

Neither party has presented any competent evidence of the value of the Collateral. Compania's evidence about its appraisal and the Pricewaterhouse working papers are both hearsay. Further, the appraisal given to Pricewaterhouse was done in 2000, and so, is not particularly relevant since the Collateral was sold in 2004. Pricewaterhouse representative Correa also disclaimed any reliability of working papers, "[W]e do not provide any statement on the sufficiency or adequacy of the information contained in our working papers or our review procedures for any other purposes sought to be achieved." Inadmissible hearsay cannot be used to support a motion for summary judgment. Fed. R. Civ. P. 56(e).[3]

Titan also cites the fact that the 1985 Pledge Agreement recited that FUNSA had a $5,000,000.00 line of credit at BROU secured by the Collateral. The fact that BROU extended a $5,000,000.00 line of credit in 1985 says nothing about the value of the Collateral in 2004. None of this is competent evidence of value. Absent some evidence of the value of the Collateral, Titan has failed to show that an issue of fact exists on Titan's

---

[3]Compania's evidence about its appraisals is admissible for the limited purpose of showing that Compania had notice of the appraisals before selling the Collateral. The evidence about the appraisals, however, cannot be admitted to prove the value of the Collateral.

defenses that Compania increased Titan's risk by selling the Collateral without notice.

Titan also cannot show any interference with any subrogation rights without evidence of the value of the Collateral. As subrogee, Titan would be entitled to exercise any rights that BROU may have had to pursue FUNSA for reimbursement, including any equity FUNSA may have had in the Collateral. See e.g., Brown v. State Farm Fire & Cas. Corp., 33 Ill.App.3d 889, 893-94, 338 N.E.2d 427, 430 (3rd Dist.1975). If FUNSA had no equity in the Collateral, however, Titan would have nothing to pursue as subrogee. Again, Titan presents no competent evidence that FUNSA had any equity in the Collateral. Titan, thus, fails to show that an issue of fact exists regarding its claim that Compania interfered with its possible subrogation rights. Titan has failed to meet its burden to show that issues of fact exists on any of these defenses.

Last, Titan argues that Compania breached its duty of good faith and fair dealing. Titan argues that Compania's failure to give Titan notice of the sale of the Collateral, and its sale of the Collateral for $2,000,000.00, constituted opportunistic behavior that violated the implied covenant of good faith and fair dealing.

The covenant of good faith and fair dealing is not an independent source of duty to the parties to a contract. Rayman 117 F.3d at 1000. The implied covenant, thus, cannot change Compania's duties under the Guaranty. Under the Guaranty, Compania had a duty not to increase Titan's risk as Guarantor. As explained above, Titan has failed to present any evidence to show that Compania did anything that increased Titan's risk. Absent such evidence, there is no showing that Compania violated the Guaranty, including the implied covenant of good faith and fair dealing. Compania is entitled to summary judgment.

THEREFORE, Plaintiff Compañía Administradora De Recuperación De Activos Administradora De Fondos De Inversión Sociedad Anónima's Motion for Summary Judgment (d/e 55) is ALLOWED. Judgment is entered in favor of Compañía Administradora De Recuperación De Activos Administradora De Fondos De Inversión Sociedad Anónima and against Titan International, Inc. in the sum of $ 1,000,000.00, plus all unpaid pre-judgment interest, at the contract rate, on the outstanding guaranteed indebtedness to the date of judgment, plus costs and expenses. All pending motions are denied as moot. Compania is directed to file an affidavit, within fourteen (14) days, setting forth the calculation of the pre-judgment

interest that accrued to the date of judgment. The pretrial conference scheduled for December 18, 2006, and trial scheduled for January 3, 2007, are canceled.

IT IS THEREFORE SO ORDERED.

ENTER: October 19, 2006.

    FOR THE COURT:

                                        s/ Jeanne E. Scott
                                        JEANNE E. SCOTT
                            UNITED STATES DISTRICT JUDGE